**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | | |
|---|---|---|
| STUART SOMLAR, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 1:25-cv-1071 |
| CREDIT ACCEPTANCE CORP. | ) | |
| | ) | |
| & | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TOGETHER CREDIT UNION | ) | |
| | ) | |
| & | ) | |
| | ) | |
| BANK OF AMERICA | ) | |
| | ) | |
| & | ) | |
| | ) | |
| UPGRADE INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| ANHEUSER BUSCH EMPLOYEE | ) | |
| CREDIT UNION | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| TRANS UNION, LLC | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

1

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Stuart Somlar, by and through the undersigned counsel, and for his Complaint against Defendants Credit Acceptance Corp. ("CAC"), Together Credit Union ("TCU"), Bank of America ("BA"), Upgrade Inc. ("AI"), Anheuser Busch Employee Credit Union ("ABECU"), Experian Information Solutions, Inc. ("EXP"), Equifax Information Services, LLC ("EQ"), and Trans Union, LLC ("TU") (and together collectively, "Defendants") for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

### JURISDICTION

1. This court has jurisdiction of the federal claim under 15 U.S.C. § 1681(p).

2. Venue is proper because EXP is headquartered in Cuyahoga County, Ohio, the acts and transactions occurred here, and CAC, TCU, BA, UI, ABECU, EXP, EQ, and TU transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Saint Louis, a part of Saint Louis County, Missouri 63121.

6. The acts that occurred giving rise to this complaint occurred while Defendant was headquartered in Ohio, making the Northern District of Ohio a proper venue under 28 U.S. Code § 1391(b)(2).

### STANDING

7. Defendants' credit reporting and/or failure to properly dispute information violated

the FCRA.

8.     Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

9.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

10.     Plaintiff, Stuart Somlar (hereafter "Plaintiff"), is a natural person currently residing in Washington County, in the state of Utah.

11.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

12.     Defendant CAC is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at PO Box 5070, Southfield, MI 48086.

13.     Defendant TCU is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 423 Lynch St., Saint Louis, MO 63118.

14.     Defendant BA is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 4060 Ogletown Stanton Rd., Newark, DE 19713.

15.     Defendant ABECU is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 1001 Lynch St., Saint Louis, MO 63118.

16.     Defendant UI is a corporation existing and operating as a furnisher of consumer credit information to consumer reporting agencies under the laws of this state with its principal address at 2 N. Central Ave, FL 10, Phoenix, AZ 85004.

17.     Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

18.     Defendant EQ is a corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

19.     Defendant TU is a corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

20.     Defendants CAC, TCU, BA, ABECU, and UI, are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

21.     EXP, EQ, and TU are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(f)). EXP, EQ, and TU regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

**FACTUAL ALLEGATIONS**

4

22. Plaintff is a consumer who is the victim of inaccurate reporting by CAC, TCU, BA, UI, ABECU, TU, EQ, and EXP.

23. CRAs, including TU, EQ, and EXP have a duty under the FCRA to follow reasonable procedures to ensure that the consumer reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. §1681(e)(B).

24. Further, both CRAs and Furnishers have a duty to conduct reasonable investigations when notified of disputed information found in a consumer credit report.

25. Here, Plaintiff is a victim of inaccurate reporting regarding alleged accounts with CAC, TCU, BA, ABECU, and UI, inaccuracies found in credit reports published by the CRA Defendants.

26. The following is a description of the inaccuracies and failures of all Defendants to investigate and update their reporting of the accounts in question.

27. In December 2024, Plaintiff discovered that the accounts he had with CAC, TCU, BA, ABECU, and UI that were reporting on his credit file were being reported in error.

28. The CAC, TCU, BA, ABECU, and UI accounts harmed the Plaintiff because each account does not accurately depict Plaintiff's credit history and creditworthiness.

29. That CAC was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

30. That CAC was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

31. On or about 11/16/24, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with CAC as disputed.

32. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

33.     Plaintiff disputed the high credit, date of last activity, date the account was opened, and the credit limit. The three credit reporting agencies were not uniformly reporting the same information for the CAC account.

34.     Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CAC.

35.     EXP, EQ, and TU received the letters sent by Plaintiff.

36.     EXP, EQ, and TU transmitted notice of these disputes to CAC via an Automated Credit Dispute Verification form ("ACDV").

37.     CAC was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

38.     Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to CAC after receiving notice of the disputes from Plaintiff.

39.     Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to CAC after receiving notice of the disputes from Plaintiff.

40.     After receiving this notice, in any subsequent voluntary reporting, CAC must then include the dispute notation on said account.

41.     On or about 02/23/25, Plaintiff received an updated credit file from EXP.

42.     That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CAC.

43.     The CAC account with EXP stated that the account was "now resolved", however Plaintiff was still in dispute of the account.

44.     Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CAC.

45. EXP failed to properly reinvestigate Plaintiff's dispute.

46. As a result of EXP's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

47. EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

48. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

49. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

50. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

51. On or about 02/23/25, Plaintiff received an updated credit file from EQ.

52. That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CAC.

53. Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CAC.

54. EQ failed to properly reinvestigate Plaintiff's dispute.

55. As a result of EQ's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

56. EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

57. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

58. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

59. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

60.     On or about 02/23/25, Plaintiff received an updated credit file from TU.

61.     That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to CAC.

62.     Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify CAC.

63.     TU failed to properly reinvestigate Plaintiff's dispute.

64.     As a result of TU's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

65.     TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

66.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

67.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

68.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

69.     That the updated 02/23/25 credit report did not contain updated marked as disputed information.

70.     The updated 02/23/25 credit report contained inaccurate information.

71.     CAC failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

72.     EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

73.     CAC must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

74.   That CAC furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

75.   That CAC failed to update the account information and mark the account as disputed on the updated 02/23/25 credit report after Plaintiff disputed the account on 11/16/24 and was given notice of such by EXP, EQ, and TU.

76.   In the alternative, if CAC properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 02/23/25 credit report.

77.   That CAC never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

78.   Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CAC in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

79.   That TCU was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

80.   That TCU was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

81.   On or about 11/16/24, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with TCU as disputed.

82.   These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

83.     Plaintiff disputed the high credit, date of last activity, date the account was opened, and the credit limit. The three credit reporting agencies were not uniformly reporting the same information for the TCU account.

84.     Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case TCU.

85.     EXP, EQ, and TU received the letters sent by Plaintiff.

86.     EXP, EQ, and TU transmitted notice of these disputes to TCU via an Automated Credit Dispute Verification form ("ACDV").

87.     TCU was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

88.     Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to TCU after receiving notice of the disputes from Plaintiff.

89.     Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to TCU after receiving notice of the disputes from Plaintiff.

90.     After receiving this notice, in any subsequent voluntary reporting, TCU must then include the dispute notation on said account.

91.     On or about 02/23/25, Plaintiff received an updated credit file from EXP.

92.     That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to TCU.

93.     Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify TCU.

94.     EXP failed to properly reinvestigate Plaintiff's dispute.

10

95.     As a result of EXP's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

96.     EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

97.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

98.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

99.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

100.    On or about 02/23/25, Plaintiff received an updated credit file from EQ.

101.    That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to TCU.

102.    Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify TCU.

103.    EQ failed to properly reinvestigate Plaintiff's dispute.

104.    As a result of EQ's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

105.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

106.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

107.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

108.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

109.    On or about 02/23/25, Plaintiff received an updated credit file from TU.

110. That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to TCU.

111. Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify TCU.

112. TU failed to properly reinvestigate Plaintiff's dispute.

113. As a result of TU's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

114. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

115. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

116. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

117. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

118. That the updated 02/23/25 credit report did not contain updated marked as disputed information.

119. The updated 02/23/25 credit report contained inaccurate information.

120. TCU failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

121. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

122. TCU must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

123. That TCU furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

124. That TCU failed to update the account information and mark the account as disputed on the updated credit report after Plaintiff disputed the account on 11/16/24 and was given notice of such by EXP, EQ, and TU.

125. In the alternative, if TCU properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 02/23/25 credit report.

126. That TCU never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

127. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from TCU in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

128. That BA was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

129. That BA was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

130. On or about 11/16/24, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with BA as disputed.

131. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

132.    Plaintiff disputed the high credit, date of last activity, date the account was opened, and the credit limit. The three credit reporting agencies were not uniformly reporting the same information for the BA account.

133.    Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case BA.

134.    EXP, EQ, and TU received the letters sent by Plaintiff.

135.    EXP, EQ, and TU transmitted notice of these disputes to BA via an Automated Credit Dispute Verification form ("ACDV").

136.    BA was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

137.    Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to BA after receiving notice of the disputes from Plaintiff.

138.    Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to BA after receiving notice of the disputes from Plaintiff.

139.    After receiving this notice, in any subsequent voluntary reporting, BA must then include the dispute notation on said account.

140.    On or about 02/23/25, Plaintiff received an updated credit file from EXP.

141.    That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to BA.

142.    Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify BA.

143.    EXP failed to properly reinvestigate Plaintiff's dispute.

144.    As a result of EXP's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

145.    EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

146.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

147.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

148.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

149.    On or about 2/23/25, Plaintiff received an updated credit file from EQ.

150.    That the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to BA.

151.    Alternatively, that the updated credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify BA.

152.    EQ failed to properly reinvestigate Plaintiff's dispute.

153.    As a result of EQ's failure to reinvestigate, the updated credit report contained inaccurate information.

154.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

155.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

156.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

157.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

158.    On or about 02/23/25 Plaintiff received an updated credit file from TU.

159. That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to BA.

160. Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify BA.

161. TU failed to properly reinvestigate Plaintiff's dispute.

162. As a result of TU's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

163. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

164. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

165. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

166. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

167. That the updated credit report did not contain updated marked as disputed information.

168. The updated credit report contained inaccurate information.

169. BA failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

170. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

171. BA must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

172. That BA furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

173. That BA failed to update the account information and mark the account as disputed on the updated 02/23/25 credit report after Plaintiff disputed the account on 11/16/24 and was given notice of such by EXP, EQ, and TU.

174. In the alternative, if BA properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated credit report.

175. That BA never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

176. Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from BA in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

177. That ABECU was reporting the account on Plaintiff's credit report with EXP, EQ, and TU.

178. That ABECU was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

179. On or about 11/16/24, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with ABECU as disputed.

180. These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

181.     Plaintiff disputed the high credit, date of last activity, date the account was opened, and the credit limit. The three credit reporting agencies were not uniformly reporting the same information for the ABECU account.

182.     Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case ABECU.

183.     EXP, EQ, and TU received the letters sent by Plaintiff.

184.     EXP, EQ, and TU transmitted notice of these disputes to ABECU via an Automated Credit Dispute Verification form ("ACDV").

185.     ABECU was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

186.     Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to ABECU after receiving notice of the disputes from Plaintiff.

187.     Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to ABECU after receiving notice of the disputes from Plaintiff.

188.     After receiving this notice, in any subsequent voluntary reporting, ABECU must then include the dispute notation on said account.

189.     On or about 02/23/25, Plaintiff received an updated credit file from EXP.

190.     That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to ABECU.

191.     Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify ABECU.

192.     EXP failed to properly reinvestigate Plaintiff's dispute.

193.    As a result of EXP's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

194.    EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

195.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

196.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

197.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

198.    On or about 02/23/25, Plaintiff received an updated credit file from EQ.

199.    That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to ABECU.

200.    Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify ABECU.

201.    EQ failed to properly reinvestigate Plaintiff's dispute.

202.    As a result of EQ's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

203.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

204.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

205.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

206.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

207.    On or about 02/23/25, Plaintiff received an updated credit file from TU.

208.     That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to ABECU.

209.     Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify ABECU.

210.     TU failed to properly reinvestigate Plaintiff's dispute.

211.     As a result of TU's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

212.     TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

213.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

214.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

215.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

216.     That the updated 02/23/25 credit report did not contain updated marked as disputed information.

217.     The updated 02/23/25 credit report contained inaccurate information.

218.     ABECU failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

219.     EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

220.     ABECU must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

221.    That ABECU furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

222.    That ABECU failed to update the account information and mark the account as disputed on the updated 02/23/25 credit report after Plaintiff disputed the account on 11/16/24 and was given notice of such by EXP, EQ, and TU.

223.    In the alternative, if ABECU properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP, EQ, and TU failed to update the account information and mark the account as disputed on the updated 02/23/25 credit report.

224.    That ABECU never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

225.    Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from ABECU in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

226.    That UI was reporting the account on Plaintiff's credit report with EXP.

227.    That UI was voluntarily reporting the account on Plaintiff's credit report with the credit reporting agencies.

228.    On or about 11/16/24, Plaintiff sent dispute letters via USPS mail to EXP, EQ, and TU notifying the account with UI as disputed.

229.    These letters provided notice of the inaccurate reporting to EXP, EQ, and TU.

230. Plaintiff disputed the high credit, date of last activity, date the account was opened, and the credit limit. The three credit reporting agencies were not uniformly reporting the same information for the UI account.

231. Once EXP, EQ, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case UI.

232. EXP, EQ, and TU received the letters sent by Plaintiff.

233. EXP, EQ, and TU transmitted notice of these disputes to UI via an Automated Credit Dispute Verification form ("ACDV").

234. UI was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

235. Alternatively, EXP, EQ, and TU negligently failed to send notice of the disputes to UI after receiving notice of the disputes from Plaintiff.

236. Alternatively, EXP, EQ, and TU willfully failed to send notice of the disputes to UI after receiving notice of the disputes from Plaintiff.

237. After receiving this notice, in any subsequent voluntary reporting, UI must then include the dispute notation on said account.

238. On or about 02/23/25, Plaintiff received an updated credit file from EXP.

239. That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to UI.

240. Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify UI.

241. EXP failed to properly reinvestigate Plaintiff's dispute.

22

242.    As a result of EXP's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

243.    EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

244.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

245.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

246.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

247.    On or about 02/23/25, Plaintiff received an updated credit file from EQ.

248.    That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to UI.

249.    Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify UI.

250.    EQ failed to properly reinvestigate Plaintiff's dispute.

251.    As a result of EQ's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

252.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

253.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

254.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

255.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

256.    On or about 02/23/25, Plaintiff received an updated credit file from TU.

257. That the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to UI.

258. Alternatively, that the updated 02/23/25 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify UI.

259. TU failed to properly reinvestigate Plaintiff's dispute.

260. As a result of TU's failure to reinvestigate, the updated 02/23/25 credit report contained inaccurate information.

261. TU failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

262. The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

263. The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

264. The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

265. That the updated credit report did not contain updated marked as disputed information.

266. The updated credit report contained inaccurate information.

267. UI failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

268. EXP, EQ, and TU failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

269. UI must have voluntarily updated the Plaintiff's alleged account by communicating with EXP, EQ, and TU.

270.     That UI furnished information to EXP, EQ, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and TU of the disputes.

271.     That UI failed to update the account information and mark the account as disputed on the updated credit report after Plaintiff disputed the account on 11/16/24 and was given notice of such by EXP, EQ, and TU.

272.     In the alternative, if UI properly updated the account information and marked the account as disputed with EXP, EQ, and TU after receiving notification of disputes from Plaintiff, then EXP failed to update the account information and mark the account as disputed on the updated credit report.

273.     That UI never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP, EQ, and TU.

274.     Alternatively, EXP, EQ, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from UI in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

275.     All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

276.     The CRA Defendants' failure to report the Account correctly and failure to report the accurate status and accurate balance harmed Plaintiff's credit score and would, at least, mislead a third-party reviewing Plaintiff's credit history.

277.     If the Furnishers had complied with their duties to reinvestigate the accounts when they received notice of the disputes, they would have conducted reasonable investigations and updated the information they were furnishing accordingly.

278.     If the CRA Defendants would have complied with their statutory duties, inaccurate information concerning the accounts would not have been reported despite notice from Plaintiff.

279.     Further, after receiving Plaintiff's disputes concerning the inaccurate information of the accounts, TU, EQ, and EXP are required to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit file(s) it published and maintained concerning Plaintiff.

280.     Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the CAC, TCU, BA, ABECU, and UI, and/or EXP, EQ, and TU.

281.     Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by CAC, TCU, BA, ABECU, and UI, and/or EXP, EQ, and TU.

282.     Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by CAC, TCU, BA, ABECU, and UI, and/or EXP, EQ, and TU.

283.     Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

284.     Plaintiff's injury-in-fact is fairly traceable to the challenged representations of CAC, TCU, BA, ABECU, and UI, and/or EXP, EQ, and TU.

285.     Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

286.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

287.     Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with EXP, EQ, and TU.

288.     EXP, EQ, and TU failed to follow reasonable procedures to keep Plaintiff's credit file accurate by including incomplete information on Plaintiff's credit file; EXP, EQ, and TU failed to send notice of the disputes received from Plaintiff to the furnishers as required, and EXP, EQ, and TU failed to update Plaintiff's credit file to ensure accuracy; EXP, EQ, and TU violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

289.     As a result of this conduct, action and inaction of EXP, EQ, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

290.     EXP, EQ, and TU's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

291.     Due to EXP, EQ, and TU's conduct, Plaintiff is entitled to recovery costs and attorney's fees from EXP, EQ, and TU in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Stuart Somlar, prays that this Court:

A.     Declare that EXP, EQ, and TU's credit reporting actions violate the FCRA;

B.     For EXP, EQ, and TU's willful violations, enter judgment in favor of Plaintiff Stuart Somlar, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      For EXP, EQ, and TU's negligent violations, enter judgment in favor of Plaintiff Stuart Somlar, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D.      Or, in the alternative, enter judgment in favor of Plaintiff Stuart Somlar, and against EXP, EQ, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E.      Grant other such further relief as deemed just and proper.

### Count II: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

292.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

293.    EXP, EQ, and TU were reporting inaccurate and incomplete information on Plaintiff's credit report.

294.    EXP, EQ, and TU's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

295.    Plaintiff disputed the accuracy of his credit report directly with EXP, EQ, and TU via dispute letters sent through USPS.

296.    Defendants EXP, EQ, and TU violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

297.    EXP, EQ, and TU failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

298.    Defendants EXP, EQ, and TU willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to CAC, TCU, BA, ABECU, and UI; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file;

and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

299. As a result of this conduct, action and inaction of EXP, EQ, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

300. EXP, EQ, and TU's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

301. The Plaintiff is entitled to recovery costs and attorney's fees from EXP, EQ, and TU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Stuart Somlar prays that this Court:

    A. Declare that EXP, EQ, and TU's credit reporting actions violate the FCRA;

    B. Enter judgment in favor of Plaintiff Stuart Somlar, and against EXP, EQ, and TU, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

    C. Or, in the alternative, enter judgment in favor of Plaintiff Stuart Somlar, and against EXP, EQ, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

    D. Grant other such further relief as deemed just and proper.

**Count III: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute**

302. Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

303.     Defendants CAC, TCU, BA, ABECU, and UI violated 15 U.S.C. § 1681s-2(b) by continuing to report the CAC, TCU, BA, ABECU, and UI, representations within Plaintiff's credit file with EXP, EQ, and TU without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the CAC, TCU, BA, ABECU, and UI representations; by failing to review all relevant information regarding same; by failing to accurately respond to CAC, TCU, BA, ABECU, and UI; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the CAC, TCU, BA, ABECU, and UI representations to the consumer reporting agencies.

304.     As a result of this conduct, action and inaction of CAC, TCU, BA, ABECU, and UI, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

305.     Defendants CAC, TCU, BA, ABECU, and UI's, conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

306.     Plaintiff is entitled to recover costs and attorney's fees from CAC, TCU, BA, ABECU, and UI, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Stuart Somlar, prays that this Court:

A.       Declare that CAC, TCU, BA, ABECU, and UI's, credit reporting actions violate the FCRA;

B.     Enter judgment in favor of Plaintiff Stuart Somlar, and against CAC, TCU, BA, ABECU, and UI, for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.     Or, in the alternative, enter judgment in favor of Plaintiff Stuart Somlar, and against CAC, TCU, BA, ABECU, and UI, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

## JURY DEMAND

307.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: May 27, 2025

Respectfully Submitted,

**HALVORSEN KLOTE DAVIS**

By:      /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
Seid Music, #76713
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hkdlawstl.com
seid@hkdlawstl.com
*Attorneys for Plaintiff*